UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| GREGORY A. LEACH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:07-CV-268  PPS |
| | ) | |
| UPS GROUND FREIGHT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is Plaintiff's Motion To Remand for Lack of Diversity Jurisdiction. [DE 6].  Because the parties are completely diverse and the Plaintiff's claims meet the jurisdictional amount, the Court has subject matter jurisdiction over this action.  The Plaintiff's motion is, therefore, **DENIED**.

**BACKGROUND**

On October 2, 2007, Plaintiff Gregory Leach filed suit against his former employee, Defendant UPS Ground Freight, Inc. ("UPS") in Allen Superior Court.  [DE 1]  Leach alleges that UPS violated Indiana's Blacklisting Statute, Ind. Code. §22-5-3, *et. seq.*, when it prevented him from obtaining a new job with Mid-States Express ("Mid-States") by improperly disclosing the results of a drug test taken when employed for UPS.  Leach further alleges that the drug test procedures were incorrectly performed by UPS and that the level of concentration found in his initial test should have been reported as a negative result.

Consistent with Indiana law, Leach's complaint did not specify a dollar amount in its prayer for relief.  It did, however, delineate the various types of damages sought by Leach,

including monetary damages for lost wages and other compensation and benefits of employment, front pay, punitive, compensatory and exemplary damages, declaratory and injunctive relief, attorney fees and costs.

UPS removed the case on October 30, 2007 [DE 2]. In its Notice of Removal, UPS attempted to establish an amount in controversy exceeding $75,000 by providing the Declaration of Alicia Green, UPS Supervisor of Employee Relations. Her Declaration indicated that Leach earned more than $18.11 per hour when employed by UPS, or $37,668.00 a year. UPS alleges that Leach's annual UPS wages, combined with what he seeks in terms of other monetary damages by way of lost benefits, punitive damages, etc. creates a controversy in excess of $75,000 and therefore satisfies the jurisdictional requirement.

Through briefing and submitted affidavit in support of his Motion to Remand, Leach alleges that had it not been for UPS's disclosure of the drug test results to Mid-States, he would have started his new job with Mid-States on June 25, 2007 at a rate $15.00 per hour. Instead, he eventually obtained a position with Waste Management, at a rate of $13.30 per hour, beginning on October 22, 2007, three weeks after filing the complaint and one week prior to UPS's removal. Leach thereby infers that it is not his annual salary at UPS that should be used as the measure of his potential damages, but merely the difference between what he would have made at Mid-States minus what he will make at Waste Management. He calculates this amount to be $16,116.00; broken down as $10,200.00 for the time he was not working after UPS made its disclosure to Mid-States, and $5,916.00 for the time working at Waste Management at an hourly rate $1.70 less than what he would have made at Mid-States. Leach also states in his Motion to Remand that he is not seeking compensation for the ninety days of health insurance and benefits

2

that he missed between the date he could have started working for Mid-States and the date he commenced work for Waste Management.

## DISCUSSION

Diversity jurisdiction is present when the parties are completely diverse and the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Complete diversity is established as Leach is a citizen of Indiana and UPS is incorporated under the laws of the Virginia, and its principal place of business is also in Virginia. Thus, Leach's motion hinges solely on whether the amount in controversy exceeded $75,000 at the time of removal.

"Whichever side chooses federal court must establish jurisdiction." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir. 2005). When a complaint alleges an amount in controversy, it controls unless recovering that amount is legally impossible. *See Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813, 815 (7th Cir. 2006). This principle does not help here because Leach's complaint makes no such allegation. In fact, an Indiana rule bars Leach from doing so. Ind. Trial R. 8(A)(2). Thus, the amount in controversy must be evaluated in some other way. The proponent's burden is a low one. In cases where the complaint provides little to no information regarding the value of the claims, the removing defendant may satisfy the amount in controversy requirement by making a "good-faith estimate of the stakes" that is "plausible." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). Proponents are not required, as was the case until recently, to establish that the amount in controversy will be exceeded with a "reasonable probability." *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006)). Instead, the standard used to measure the proponent's burden is divided

into two steps.  First, the proponent must prove its jurisdictional factual assertions by a preponderance of the evidence *but only if* those facts are contested.  *Id*. at 540-41.  Once the proponent has established these facts, "uncertainty about whether the plaintiff can prove its substantive claim, and whether damages...will exceed the threshold, does not justify dismissal." *Id*. at 543.  At this point, "the plaintiff can defeat jurisdiction only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount."  *Oshana v. Cocal-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006)(quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

    Here, UPS has made a good faith, plausible estimate that the amount of controversy exceeds the $75,000 level necessary to secure federal jurisdiction.  It bases the estimate on facts available to it at the time of the removal - primarily on Leach's annual salary at UPS at the time he was terminated.   UPS rightly understood the complaint to be seeking compensation for loss of future wages.  Although it did not know what salary Leach would have earned with Mid-States had UPS not disclosed the results of the drug test, it naturally assumed  the Mid-States job to be similar to the one Leach had with UPS.  Its use of Leach's most recent annual salary therefore represents a reasonable starting point for estimating potential damages in the event Leach prevails.  For the reasons stated, I find UPS's claim to be plausible and in good faith, and therefore in satisfaction of the jurisdictional requirements.  "[T]he sum claimed by [the proponent of jurisdiction] controls if the claim is apparently made in good faith." *Meridian*, 441 F.3d at 541 (quoting *St. Paul Mercury,* 303 U.S. at 288-89).

    Moreover, Leach's proposed methodology is flawed in several respects.  He attempts to show that he has mitigated his damages by securing a job with Waste Management, and that he

4

therefore is only entitled to the difference between his earnings there and what he would have earned with Mid-States.[1] Leach argues in his motion that the difference in hourly pay, when calculated for two years from the time of UPS's disclosure, only amounts to $5,916.00. But Leach provides no authority for why UPS, or this Court, should expect his damages to be limited to only two years. The proper calculation for front pay has been defined as "the discounted present value of the difference between the earnings [an] employee would have received in his old employment and the earnings he can be expected to receive in his present and future, and by hypothesis, inferior employment." *See Williams v. Pharmacia*, *Inc.*, 137 F.3d 944, 953 (7th Cir. 1998) (quoting *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1141 n.8 (7th Cir. 1994)). In Indiana, there are no cases directly setting the appropriate standard for front pay to be awarded under the blacklisting statute, but opinions weighing in on damages awarded for wrongful discharge causes of action are sufficiently on point. These cases provide that the duration used to determine front pay damages is up to the fact-finder, and may be significantly longer than the two years assumed arbitrarily by the Plaintiff. *See Landis v. Landis*, 664 N.E.2d 754, 757 (Ind. Ct. App. 1996) (holding jury did not abuse its discretion in setting victim's wrongful discharge damages at over two million dollars based upon seventeen years of expected future employment); *Haas Carriage, Inc. v. Berna*, 651 N.E.2d 284, 289 (Ind. Ct. App. 1995) ("[O]nce the employee has proven his discharge was retaliatory, damages must be assessed based upon a presumption of prospective employment."); *Remington Freight Lines, Inc. v. Larkey*, 644

---

[1]Leach did not provide information about the existence of his new position with Waste Management or the proposed salary at Mid-States in the complaint. Nor did he otherwise place it in the record prior to UPS's Notice of Removal. In fact, he only acquired the new job after filing his complaint. This information only came to light through Leach's Motion to Remand.

N.E.2d 931, 941-42 (Ind. Ct. App. 1994) (providing that jury, when calculating damages for retaliatory discharge, should not assume that at-will employee would be fired for some other reason, and that the duration of employment applied should be a "reasonable time").  Therefore, Leach's damages for front pay may be far greater than the $5,916.00 he asserts for purposes of his Motion to Remand and he cannot say that it is a legal certainty that they will be limited by a jury to only two years.

In addition, UPS's Notice of Removal and response to Leach's Motion to Remand notes that Leach's complaint seeks not just lost wages, but benefits and punitive damages.  A company found in violation of Indiana's statute "shall be liable to such employee in such sum as will fully compensate him, to which may be added exemplary damages."  Ind. Code. §22-5-3-2.  Leach states in his Motion that he is not seeking the four months of health insurance/benefits he would have had if he had been hired by Mid-States.  This stipulation comes too late to play a role in the jurisdictional analysis, as it is the claims present in the complaint and in existence at the time of removal that control.   A district court is not deprived of jurisdiction where "the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite amount."  *St. Paul Mercury*, 303 U.S. at 292 (1938); *accord Rising-Moore*, 435 F.3d at 816 ("post-removal events – even an irrevocable promise not to accept more than the jurisdictional minimum – do not authorize remand of a suit that was within federal jurisdiction when removed"); *Chase v. Shop 'N Save Warehouse Foods, Inc*., 110 F.3d 424, 429 (7th Cir. 1997); *Shaw v. Dow Brands, Inc*., 994 F.2d 364, 367 (7th Cir. 1993) (post-removal stipulation is problematic because it conflicts with a legal maxim that jurisdiction depends on the situation at the time of removal.")   Moreover, Leach has made no representation as to whether he is seeking

a claim as to the difference in value between Mid-States and Waste Management's health benefits, nor has he ruled out categories of employment benefits other than health insurance.

Lastly, the blacklisting statute and general Indiana law make punitive and exemplary damages available for Leach in his cause of action.  *See* Ind. Code. §22-5-3-2; *Bridgestone/Firestone, Inc.*, *v. Lockhart*, 5 F. Supp. 2d 667, 688-689 (noting the possible availability of exemplary and punitive damages under statute in the event of malicious efforts to destroy a former employee's career); *see also*, *DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc.*, 384 F.3d 338, 354 (7th Cir. 2004) ("Under Indiana law, tortious conduct involving 'malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing' may be punished by an award of punitive damages.").   Leach has in fact made a claim for punitive damages, which in Indiana, may amount to the greater of $50,000 or three times the amount of compensatory damages.  Ind. Code. §34-51-3-4.  With this possible sum aggregated to the amount already established through lost wages and benefits, the amount in controversy is more than enough to exceed $75,000.[2]

In sum, UPS has demonstrated, through a good faith estimate, that the amount in controversy exceeded $75,000 at the time of removal.  Leach has not challenged the factual allegations making up UPS's estimate and has provided only a questionable alternative method for calculation in its place.  Nor has Leach shown that it was legally impossible at that time of

---

[2]Leach has also added claims for declaratory and injunctive relief, but because neither party has discussed these claims in any detail, they are not factored into the amount in controversy estimate.

7

removal for Leach to recover more than the jurisdictional minimum. Therefore, jurisdiction is proper under §1332.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion To Remand for Lack of Diversity Jurisdiction [DE 6] is **DENIED**.

**SO ORDERED.**

ENTERED: December 17, 2007

                                        s/ Philip P. Simon
                                        PHILIP P. SIMON, JUDGE
                                        UNITED STATES DISTRICT COURT