UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| GREGORY LEACH | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:07CV268PS |
| | ) | |
| | ) | |
| UPS GROUND FREIGHT, INC. | ) | |

**MEMORANDUM OPINION AND ORDER**

Greg Leach is a truck driver who was fired by UPS after he supposedly tested positive for cocaine. Leach claims to have been the victim of faulty testing. While he admits that he used cocaine on one occasion, that was twenty years ago and obviously such use could not lead to a positive result today.  Leach demanded that UPS retest him.  They did, but according to Leach's complaint, UPS did not properly administer the test.  UPS did not use gas chromotography/mass spectrometry to verify the tests results, although Department of Transportation regulations mandate such testing.  In a bit of a contradiction, Leach goes on to allege in the complaint that the level of cocaine in his system – if any was there at all – was below the concentration level necessary for a "positive" test result under DOT standards. Cmplt. at 2.

After being fired from UPS, Leach applied for and was offered a job at Mid-States Express, Inc., another trucking firm.  The offer, however, was contingent on Mid-States verifying Leach's prior employment.  Leach knew that Mid-States would contact UPS so he beat them to the punch.  He called UPS' Human Resources Office and told them that someone from Mid-States would be calling.  Leach requested that UPS not disclose the positive drug test because UPS did not properly administer the tests.  Leach then faxed to UPS his position that the tests results should not be reported as positive because of UPS' failure to follow proper

procedure in administering the tests. UPS ignored Leach's request and reported the test results to Mid-States as having been positive for cocaine. Not surprisingly, Leach never got the job with Mid-States. Leach claims these actions by UPS constitute a violation of the Indiana Blacklisting statute. *See* Ind.Code § 22-5-3-2. UPS has moved to dismiss the complaint arguing that it fails to state a claim for relief. *See* Fed. R. Civ. Pro. 12(b)(6).

The pleading standards were retooled last year by the Supreme Court. In the context of a motion to dismiss for failure to state a claim, the Court stated that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Instead, the Court held that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

Two weeks later the Supreme Court decided *Erickson v. Pardus*, 127 S.Ct. 2197 (2007). In *Erickson* the Court also took up the issue of pleading standards, but this time in the context of *pro se* litigation. In *Erickson*, the Court stated that "[s]pecific facts are not necessary" to meet the requirements of Rule 8(a). In an effort to reconcile *Twombly* and *Erickson* the Seventh Circuit has read those cases together to mean that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."*Airborne Beepers & Video, Inc. v. AT&T Mobility*, 499 F.3d 663, 667 (7th Cir. 2007)**.**

The Indiana Blacklisting statute prohibits employers doing *anything* that prevents employees who have left their firm from obtaining other employment. The statute is written in surprisingly broad terms. Here is the pertinent part of the statute: "If any . . . company . . .

permits any of its . . . agents to blacklist any discharged employees, or attempt by words or writing, or by any other means, whatever, to prevent such discharged employee . . . from obtaining employment with any other person, or company, said company shall be liable to such employee . . ." I.C. § 22-5-3-2.  The law is an anachronism dating back to the late 1800's when railroads routinely blacklisted employees. Although it has a thick layer of dust on it, the statute remains on the books in Indiana.

Besides being an antique, the statute has rarely been interpreted by Indiana courts.  I have located only a handful of reported cases in the annals of Indiana law applying I.C. § 22-5-3-2, all of which address the statute at a later procedural posture than a motion to dismiss. *Kentner v. Timothy R. Downey Ins., Inc.*, 430 F.Supp.2d 839 (S.D. Ind. 2006)(ruling on motion for summary judgment); *Butts v. Oce-USA, Inc.*, 9 F.Supp.2d 1007 (S.D. Ind. 1998)(granting motion for summary judgment); *Bridgstone/Firestone v. Lockhart*, 5 F.Supp.2d 667 (S.D. Ind. 1998); *Eitler v. St. Joseph Reg'l Med. Ctr. South Bend Campus, Inc.*, 789 N.E.2d 497 (Ind. Ct. App. 2003)(reviewing trial court's grant of summary judgment); *Brazauskas v. Fort Wayne-South Bend Diocese, Inc.*, 755 N.E.2d 201 (Ind. Ct. App. 2001)(granting summary judgment); *rev'd. on other grounds*, 796 N.E.2d 286 (Ind. 2003); *Burk v. Heritage Food Service Co.*, 737 N.E.2d 803 (Ind. Ct. App. 2000)(ruling on appeal after bench trial).   One other case,  *See Wabash RR. Co. v. Young,* 69 N.E. 1003 (Ind. 1904), applied a predecessor version of the statute and *Wabash RR* presented an entirely different issue to the Court and is not at all on point.  Thus, none of these cases are particularly instructive especially since this matter is before me on a motion to dismiss.

UPS first argues that the complaint should be dismissed because there are no allegations that it attempted to prevent plaintiff from obtaining employment.  In particular, UPS argues that

3

there are no allegations that it "purposefully" tried to prevent Leach from getting his new job. Mtn. To Dismiss at 3.  First, the words "intent" and "purpose" do not appear in the statute and it would require an assumption on my part to read that element into the law that prohibits "attempts" at preventing future employment.  But even if "intent" was established as a required element, Leach's complaint meets that standard nonetheless.  He alleges that he was fired based on a faulty drug test.  He demanded re-testing but that re-test did not conform to Department of Transportation guidelines. When he was offered the new job, he specifically told UPS that the testing procedures in which they employed were faulty and that his results – per DOT guidelines – should be reported as negative.  UPS ignored his pleas and released the faulty results anyway. If one believes this version of events (which I must accept at this preliminary stage of the proceedings), UPS's receipt of notice as to its faulty procedures and then its disregard of that notice plainly shows a purposeful effort to prevent Leach from getting the new job.

There are two safe-harbors in the blacklisting statute which provide immunity to employers who provide information to subsequent employers.  The first states that the act "does not prohibit a person from informing, in writing, any other person to whom the discharged employee has applied for employment a truthful statement of the reason for the discharge."  I.C. §22-5-3-1(a).  The second safe-harbor provides that an employer is immune from civil liability unless it is "proven by a preponderance of the evidence that the information disclosed was known to be false at the time the disclosure was made."  I.C. § 22-5-3-1(b). These provisions are of the nature of affirmative defenses, and dismissal of a complaint based on an affirmative defense is not appropriate.  This is because a plaintiff need not plead around all potential defenses.  *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

It is true that a plaintiff can plead himself out of court by alleging facts that constitute the affirmative defense. *Id*. But that has not occurred here. The first safe harbor says that a former employee must have provided a "truthful statement of the reasons for discharge." I.C. § 22-5-3-1(a). Leach has only alleged that "UPS disregarded Plaintiff's phone call and fax and informed Mid-States that Plaintiff had tested positive for a controlled substance." Complaint, ¶ 18. He has not alleged that the communications between UPS and Mid-States included "reasons for discharge," as the safe harbor requires, or even if the fact of discharge was communicated at all. Rather, Leach alleges that UPS provided false information to Mid-States that Leach had failed a drug test. [1]

As for the other defense – that Leach must prove that the information provided by UPS was "known to be false" at the time of the disclosure – he has plainly pleaded facts that establish this to be the case. According to the complaint, Leach specifically told UPS that the drug test needed to be reported as negative because it did not conform to DOT requirements. But UPS ignored what it was told and provided the information to Mid-States anyway, knowing it to be false. Leach need not have alleged anything more to survive a motion to dismiss. The proof of the pudding, of course, is in its taste, and that is what discovery is for.

UPS finally argues that it should not be liable under the Indiana Blacklisting statute for

---

[1] IC § 22-5-3-1 is a criminal statute with penal damages recoverable by the employee through civil action. IC § 22-5-3-2 is a nearly identical civil statute, although only the former requires that one prove the employee was actually prevented from obtaining employment. *See Butts v. Oce-USA, Inc.*, 9 F.Supp.2d at 1013 n.6. It's worth noting that the first safe harbor, which UPS wishes to use to show it is not liable under IC § 22-5-3-2, is found only in IC § 22-5-3-1(a) and, by its own terms, is only applicable to "this subsection." However, because I have for other reasons already rejected UPS's argument regarding the first safe harbor, I will not now address its applicability to IC § 22-5-3-2.

providing information about Leach's positive drug test because DOT regulations required it to pass this information along to Mid-States. *See* 49 C.F.R. 40.25(h).  But that provision mandates only that "verified positive drug tests" be disclosed.  Leach's complaint alleges that he tested below the legal limit which – according to DOT regulations – must be reported as a negative result.  *See* 40 C.F.R. § 40.87.  Leach further alleges that the re-test was faulty because it was not done with gas chromotography/mass spectrometry.  Therefore, the test results were not "verified positive" and as such UPS did not need to (and in fact should not have) disclosed the results to Mid-States.  These are matters that need to be fleshed out in discovery.  The motion to dismiss is therefore **DENIED**.

**SO ORDERED**.

ENTERED: June 3, 2008

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
